IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-236

Filed 2 January 2024

Office of Administrative Hearings, No. 22 OSP 00401

WILLIAM T. CULPEPPER, III, Petitioner,

v.

N.C. OFFICE OF ADMINISTRATIVE HEARINGS, Respondent.

Appeal by Petitioner from a final decision entered 2 December 2022 by Administrative Law Judge Beecher R. Gray in the Office of Administrative Hearings. Heard in the Court of Appeals 20 September 2023.

*Hornthal, Riley, Ellis & Maland, L.L.P., by John D. Leidy, for petitioner-appellant.*

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Joseph Finarelli, for respondent-appellee.*

WOOD, Judge.

William Culpepper ("Petitioner") alleges the Office of Administrative Hearings ("OAH" or "Respondent") engaged in political affiliation discrimination by designating the position of General Counsel at OAH as exempt from the provisions of the Human Resources Act, a position he held from 1 January 2015 to 30 June 2022. We hold the trial court did not err by granting summary judgment in Respondent's favor because Petitioner failed to carry his burden of establishing a *prima facie* case of political affiliation discrimination.

# I. <u>Factual and Procedural History</u>

Petitioner is a member of the North Carolina State Bar and practiced law in Edenton, North Carolina from 6 September 1973 until 1 January 2006. Petitioner served as an elected Democrat member of the North Carolina House of Representatives from 5 May 1993 until 1 January 2006 and alleges his reputation as a prominent Democrat was widely known and reported in the news during his time in office.

In October 2014, Petitioner applied for the position of General Counsel with the OAH. The Job Class Title for this position was "Attorney II." The description of work provided in the job posting for the position stated the hired employee:

> "performs a full range of legal services in matters affecting the legal responsibilities of OAH[,] . . . provides the delivery of legal services involving legal advice, opinions, research, writing, adjudications, consultations, mediations, and judicial administration[,] . . . act[s] as the agency rule coordinator[,] . . . [and] prepares opinions on North Carolina law for the three divisions [Civil Rights, Rules, and Hearings].

Petitioner was appointed to the position effective 1 January 2015.

On 1 July 2021, Chief Justice Paul Newby of our Supreme Court appointed Donald van der Vaart ("Director van der Vaart") as the Director and Chief Administrative Law Judge of OAH. Petitioner alleges Director van der Vaart is a registered Republican. Petitioner further alleges that, according to OAH's Senior Administrative Law Judge Fred Morrison ("Judge Morrison"), shortly after Director

van der Vaart assumed his position at OAH, Director van der Vaart asked Judge Morrison why Petitioner was at OAH.[1]  Judge Morrison allegedly replied to Director van der Vaart that he and Petitioner had a long association over the years, Petitioner was no longer involved in politics, was loyal to OAH, and he would be loyal to Director van der Vaart.

As part of the Current Operations Appropriations Act of 2021 (S.L. 2021-180, S.B. 105) enacted on 18 November 2021, the General Assembly included a provision (the "Special Provision") allowing the Chief Administrative Law Judge to designate five OAH employees as exempt from the Human Resources Act.  The Special Provision reads:

> The number of administrative law judges and employees of the Office of Administrative Hearings shall be established by the General Assembly.  The Chief Administrative Law Judge and five employees of the Office of Administrative Hearings as designated by the Chief Administrative Law Judge are exempt from provisions of the North Carolina Human Resources Act as provided by [N.C. Gen. Stat. §] 126-5(c1)(27).  All other employees of the Office of Administrative Hearings are subject to the North Carolina Human Resources Act.

Current Operations Appropriations Act of 2021, S.L. 2021-180 (S.B. 105).

Petitioner alleges Judge Morrison told him about a purported meeting between Director van der Vaart and Kenan Drum ("Drum") at the Legislative Building prior

---

[1] Director van der Vaart states in his affidavit he was aware Petitioner had been appointed to serve on the North Carolina Utilities Commission by a former Democrat Governor.

to the Special Provision becoming public on 15 November 2021. Drum was the Policy Advisor for General Government Appropriations to the Senate President Pro Tempore. Petitioner alleges that, according to Judge Morrison, the meeting was arranged by Ashley Berger Snyder ("Ms. Snyder"), Senator Berger's daughter. Petitioner alleges the appropriations budget for OAH is formulated by the General Government Appropriations Subcommittee of the General Assembly's House and Senate. Petitioner further alleges Judge Morrison was told by Director van der Vaart that Drum had referred to Judge Morrison as an "old time Democrat."

After the Special Provision became public, "much talk and concern" arose among OAH personnel, particularly among the Administrative Law Judges ("ALJ"). According to Judge Morrison, when Director van der Vaart heard about these concerns, he sought to allay the ALJs' fears by proclaiming that the Special Provision was not meant for them. Judge Morrison allegedly told Director van der Vaart one person felt the Special Provision was directed at him. Judge Morrison told Petitioner that he felt that Director van der Vaart was referring to Petitioner, but neither specifically stated Petitioner's name. Director van der Vaart replied to Judge Morrison, "that might be right," or words to that effect. The Petitioner discussed with Judge Morrison his fears regarding the Special Provision adversely affecting his employment.

By letter dated 4 January 2022, Director van der Vaart notified Petitioner he was designating the position of General Counsel as exempt from the State Human

Resources Act, pursuant to the authority in the Special Provision. The letter informed Petitioner of the right to appeal the designation pursuant to N.C. Gen. Stat. § 126-5(h) and provided information on commencing a contested case under N.C. Gen. Stat. § 150B-23. On 2 February 2022, Petitioner filed a Petition for a Contested Case Hearing in which he alleged Respondent: (1) designated his position as an exempt managerial position based on Respondent's discrimination against Petitioner due to his political affiliation in violation of N.C. Gen. Stat. § 126-34.02(b) (2022); (2) improperly designated his position as an exempt managerial position as defined by N.C. Gen. Stat. § 126-5(b)(2) (the "Designation Claim"); and (3) violated Petitioner's state and federal constitutional rights by changing the position's designation.

On 10 February 2022, Respondent filed its letter to Petitioner notifying him of his position's designation change. This letter documented the agency action from which Petitioner filed his petition for a contested case hearing. On 11 February 2022, Respondent filed a Partial Motion to Dismiss pursuant to N.C. R. Civ. P. 12(b)(1) and 12(b)(6), arguing that as to Petitioner's political affiliation discrimination claim, he had failed to exhaust his administrative remedies as required by N.C. Gen. Stat. § 126-34.01 (2022) and failed to establish a *prima facie* case of political discrimination.

On 24 February 2022, Petitioner filed an Amended Petition for a Contested Case Hearing, specifying his and Director van der Vaart's political affiliations. On 8 March 2022, Respondent filed a Partial Motion to Dismiss Petitioner's amended petition. On 18 May 2022, ALJ Gray issued an order in which he dismissed

Petitioner's constitutional claims for lack of subject matter jurisdiction and deferred judgment on Petitioner's political affiliation discrimination claim and requested additional briefing. On 10 June 2022, ALJ Gray denied Respondent's motion to dismiss Petitioner's political affiliation discrimination claim. Director van der Vaart discharged Petitioner from employment on 30 June 2022.

On 31 August 2022, Respondent filed a motion for summary judgment, supported by affidavits by Director van der Vaart and Judge Morrison, on Petitioner's political affiliation claim. Petitioner filed his own affidavit in response to Respondent's motion for summary judgment on 15 September 2022. After a hearing on 10 November 2022, ALJ Gray issued an order on 2 December 2022 in which he found no genuine dispute exists as to any material fact in Petitioner's designation and political affiliation claims.

ALJ Gray entered summary judgment for Petitioner on his claim that his position was improperly designated as an exempt managerial position, and ordered he be "reinstated to his status as a Career State Employee under [N.C. Gen. Stat.] § 126-1.1 and further that he be awarded back pay and benefits for any pay and benefits he has lost or loses before he is so reinstated." ALJ Gray entered summary judgment in favor of Respondent on Petitioner's political affiliation claim, dismissing it with prejudice.

On 3 January 2023, Petitioner filed written notice of appeal to this Court pursuant to N.C. Gen. Stat. §§ 126-34.02 and 7A-29. On 9 April 2023, upon the

parties' cross-Motions for Judicial Review, the superior court vacated ALJ Gray's order granting summary judgment in favor of Petitioner on his Designation Claim, and remanded to ALJ Gray for consideration of whether Director van der Vaart's designation of Petitioner's position as exempt from the Human Resources Act was other than as required by law, including under the state and federal constitutions. *Culpepper v. N.C. Office of Administrative Hearings*, Nos. 22 CVS 110 and 213 (N.C. Super. Ct. Apr. 9, 2023). Petitioner has filed a separate contested case regarding his discharge, which is not at issue here. All other relevant facts are provided as necessary in our analysis.

## II. <u>Analysis</u>

The sole issue before this Court is whether ALJ Gray erred in granting summary judgment in favor of Respondent on Petitioner's political affiliation discrimination claim.

Appellate courts review an appeal from a summary judgment de novo. *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008). Summary judgment is proper when:

> there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law. When considering a motion for summary judgment, the trial judge must view the presented evidence in a light most favorable to the nonmoving party. If the movant demonstrates the absence of a genuine issue of material fact, the burden shifts to the nonmovant to present specific facts which establish the presence of a genuine factual dispute for trial.

*Id.* at 573, 669 S.E.2d at 576 (citations omitted).

Under N.C. Gen. Stat. § 126-34.02, a petitioner of a contested case in OAH is entitled to this Court's judicial review of a final decision of OAH if a State employee alleges discrimination based on political affiliation in the terms and conditions of his employment. N.C. Gen. Stat. § 126-34.02(a), (b)(1); *see* N.C. Gen. Stat. § 7A-29. North Carolina courts "look to federal decisions for guidance in establishing evidentiary standards and principles of law to be applied in discrimination cases." *N.C. Dep't of Correction v. Gibson*, 308 N.C. 131, 136, 301 S.E.2d 78, 82 (1983). Specifically, North Carolina courts have adopted the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). *Gibson*, 308 N.C. at 136, 301 S.E.2d at 82. This framework requires the claimant to establish a *prima facie* case of discrimination. *Id.* at 137, 301 S.E.2d at 82.

First, a claimant must show:

> (1) the employee worked for a public agency in a non-policymaking position (i.e., a position that does not require a particular political affiliation), (2) the employee had an affiliation with a certain political party, and (3) the employee's political affiliation was the cause behind, or motivating factor for, the adverse employment action.

*N.C. Dep't of Pub. Safety v. Ledford*, 247 N.C. App. 266, 288, 786 S.E.2d 50, 65 (2016) (brackets and ellipsis omitted). The court in *Ledford* provided further guidance on establishing a *prima facie* case:

> [T]he burden of establishing a *prima facie* case of discrimination is not onerous and may be established in various ways, including a showing of dissimilar treatment of the claimant as compared to other employees. This is because the showing of a *prima facie* case is not equivalent to a finding of discrimination. Rather, it is proof of actions taken by the employer from which a court may infer discriminatory intent or design because experience has proven that in the absence of an explanation, it is more likely than not that the employer's actions were based upon discriminatory considerations.

*Id.* at 287–88, 786 S.E.2d at 64 (citation, quotation marks, and brackets omitted).

Second, if the claimant establishes a *prima facie* case of political discrimination, "[t]he burden shifts to the employer to articulate some legitimate nondiscriminatory reason for the applicant's rejection." *Gibson*, 308 N.C. at 137, 301 S.E.2d at 82; *see id.* at 293, 786 S.E.2d at 67–68 ("Our case law makes [it] clear that once the employee has satisfied the three elements of his *prima facie* case, the burden shifts to the employer to articulate some nondiscriminatory reason for taking adverse action against him.").

Third, and finally, "[i]f a legitimate nondiscriminatory reason for rejection has been articulated, the claimant has the opportunity to show that the stated reason for rejection was, in fact, a pretext for discrimination." *Gibson*, 308 N.C. at 137, 301 S.E.2d at 82. "To carry this burden, it is permissible for the employee to rely on evidence offered to establish his *prima facie* case." *Ledford*, 247 N.C. App. at 294, 786 S.E.2d at 68. Nevertheless, "[t]o raise a factual issue regarding pretext, the plaintiff's evidence must go beyond that which was necessary to make a *prima facie*

showing by pointing to specific, non-speculative facts which discredit the [employer's] nondiscriminatory motive." *Head v. Adams Farm Living, Inc.*, 242 N.C. App. 546, 558, 775 S.E.2d 904, 912 (2015) (brackets omitted).

Respondent concedes Petitioner has satisfied the first two prongs of establishing a *prima facie* case. Respondent, however, contends Petitioner failed to establish Respondent's alleged discriminatory intent as a matter of law. We agree.

The Human Resources Act and its employment protections apply to all State employees not specifically exempted in N.C. Gen. Stat. § 126-5. Exempt positions are either "exempt managerial" or "exempt policymaking." N.C. Gen. Stat. § 126-5(b)(2)–(3a). Exempt managerial positions are those "delegated with significant managerial or programmatic responsibility that [are] essential to the successful operation of a State department, agency, or division, so that the application of [N.C. Gen. Stat. §] 126-35 (2022)[2] to an employee in the position would cause undue disruption to the operations of the agency, department, institution, or division." N.C. Gen. Stat. § 126-5(b)(2).

The General Assembly amended N.C. Gen. Stat. § 126-5, effective 18 November 2021, to allow the OAH Director to designate five OAH employees as exempt from the

---

[2] N.C. Gen. Stat. § 126-35 provides: "No career State employee subject to the North Carolina Human Resources Act shall be discharged, suspended, or demoted for disciplinary reasons, except for just cause." N.C. Gen. Stat. § 126-35(a).

Human Resources Act. N.C. Gen. Stat. § 126-5(c1)(27). Director van der Vaart designated Petitioner and three other positions as managerially exempt.

Considering the evidence of Respondent's alleged discriminatory intent chronologically, the first event relevant to Respondent's asserted state of mind occurred shortly after Director van der Vaart assumed his position as OAH Director and Chief Administrative Law Judge when he asked Judge Morrison why Petitioner was at OAH. There is no explanation in the Record regarding why Director van der Vaart asked Judge Morrison this question. In his affidavit, Petitioner quotes Director van der Vaart's affidavit in which he states he was aware Petitioner had been appointed to serve on the Utilities Commission by a Democrat Governor. However, this "admission" followed his statement asserting he had not considered the political affiliation of any of the individuals whose positions he designated as managerial exempt, although he was aware Petitioner was registered as a Democrat. Director van der Vaart's "admission" is also relevant to Respondent's concession of prong two of Petitioner's *prima facie* case, that Petitioner is affiliated with a certain political party, but it does not explain a discriminatory reason behind him asking Judge Morrison why Petitioner worked at OAH. *Ledford*, 247 N.C. App. at 288, 786 S.E.2d at 65.

According to Petitioner, Judge Morrison apparently interpreted Director van der Vaart's inquiry as displaying concern regarding Petitioner's loyalty because Judge Morrison assured Director van der Vaart that Petitioner was no longer

involved in politics and was loyal to OAH. Judge Morisson's response to Director van der Vaart is not evidence of Respondent's discriminatory intent when there is a total absence of context surrounding Director van der Vaart's question to Judge Morrison. To conclude that Director van der Vaart's question held discriminatory intent would require looking beyond his question and speculating about his motive based on Judge Morrison's seeming interpretation of his question.

Petitioner next alleges that before the Special Provision became public, Director van der Vaart had a meeting with Drum at the Legislative Building in which Drum had referred to Judge Morrison as an "old time Democrat." The statement has very little, if any, relevance to discerning Respondent's motivation for designating Petitioner's position as managerial exempt. Director van der Vaart is not the person alleged to have made the statement. Moreover, no connection to Drum's alleged statement and Director van der Vaart's statement is asserted, such as adoption by Director van der Vaart of what Drum said (for example, "I know, right?" or "I agree."). No evidence is shown of any disparaging or discriminatory remark made by Director van der Vaart in response to Drum's purported statement concerning Judge Morrison. Its relevance is limited to Director van der Vaart's knowledge that Judge Morrison is a registered Democrat, but it does not demonstrate any discriminatory intent in designating Petitioner's position as managerial exempt.

We next consider the concern among OAH personnel regarding the Special Provision as well as Director van der Vaart's comment stating, "that might be right."

The fact that the Special Provision was a subject of "much talk and concern" among OAH personnel demonstrates, if anything, that it was not clear which positions would be designated managerial exempt. After Judge Morrison stated to Director van der Vaart that there was one person who felt the Special Provision was meant for him, Director van der Vaart responded, "that might be right," or words to that effect, without identifying Petitioner by name, leaving any effort to determine whether Director van der Vaart had targeted Petitioner based on political affiliation merely speculative.

Moreover, even if Petitioner were the person to whom Judge Morrison referred, the conversation could just as easily, and perhaps even more logically, be interpreted to mean the *General Assembly*, rather than Director van der Vaart, had targeted Petitioner with its Special Provision. In his affidavit, Director van der Vaart stated that he "had no conversations with members of the General Assembly about establishing exempt positions at OAH and was therefore surprised to learn of legislators' revisions to [N.C. Gen. Stat.] § 126-5(c1)(27) giving me, as the Director, the authority to designate five additional positions within OAH as exempt from the" Human Resources Act.

The Record does not show whether Plaintiff was the subject of their conversation, and we will not rely upon mere conjecture to reach a conclusion. *Morrison-Tiffin v. Hampton*, 117 N.C. App. 494, 505, 451 S.E.2d 650, 658 (1995) (summary judgment properly entered for defendants where plaintiffs could only "rely

on mere conjecture and have shown no facts sufficient to support their allegations of a common agreement and objective" of gender discrimination).

In summary, the Record indicates Director van der Vaart only mentioned Petitioner by name once to inquire of Judge Morrison why he was working at OAH, and it is mere conjecture to presume Judge Morrison and Director van der Vaart were speaking of Petitioner when Director van der Vaart commented "that might be right."

Director van der Vaart designated three other positions as managerial exempt: Lamont Goins, the Director of the Civil Rights Division; Ms. Snyder, the Codifier of Rules; and Angeline Hariston, the Human Resources Director. Director van der Vaart designated the Codifier of Rules as exempt, even though he was aware the employee was a registered Republican. Additionally, the Record reveals Director van der Vaart was not aware of the political affiliations of the Director of the Civil Rights Division or of the Human Resources Director. Therefore, we cannot "infer discriminatory intent or design." *Ledford*, 247 N.C. App. at 288, 786 S.E.2d at 64.

The Record does not provide an explanation for the designation or evidence that amounts to more than mere speculation. We are unpersuaded that it is more likely than not Director van der Vaart designated Petitioner's position as exempt based on political discrimination, especially in the light of the fact that Director van der Vaart designated three other positions as exempt, including at least one of which was occupied by a registered Republican. *Ledford*, 247 N.C. App. at 287–88, 786 S.E.2d at 64. Petitioner has not established a *prima facie* case of discrimination.

Accordingly, ALJ Gray did not err in granting summary judgment in Respondent's favor.

We briefly address Petitioner's argument that his position's lack of managerial responsibility demonstrates the pretextual nature of Respondent's explanation for designating it as managerial exempt. Petitioner argues Respondent failed to consider the Division of State Archives' Functional Schedule for North Carolina State Agencies, which states that communications by "agency staff who are involved in decision-making, policy development, or other high-level planning for the agency" shall be archived permanently. Petitioner further argues Respondent failed to consider the definition of "Managerial positions" as is defined in 25 N.C. ADMIN. CODE 1L.0306 (2023):

> Managerial positions are defined as positions which manage established divisions or subdivisions of a department, agency or university. These employees direct the work of one or more supervisors and have the authority to hire, reward, discipline, or discharge employees. These employees may also provide suggestions for changes in policy to senior executives with policy-making authority.

25 N.C. ADMIN. CODE 1L.0306(b) (2023).

First, we note these arguments are more properly aimed at Petitioner's Designation Claim, which is focused on the legality of Respondent's designation. This claim is not before us on appeal. Second, the manner by which the Division of Archives classifies communications lacks any discernable relevance to Respondent's state of mind in designating Petitioner's position as exempt. Third, 25 N.C. ADMIN.

CODE 1L.0306(b) is written in the context of Title 25 of our Administrative Code, Subchapter 1L, Section 0.300, titled, "Equal Employment Opportunity Institute" ("EEOI").

The definition of "Managerial positions" in that section answers the question of who must participate in the EEOI, as is required in 25 N.C. ADMIN. CODE 1L.0302 (2023): "Supervisors and managers hired, promoted or appointed on or after July 1, 1991 shall participate in the EEOI." Whether Respondent did or did not consider this part of our State's Administrative Code is not probative of his state of mind in designating Petitioner's position as exempt.

Petitioner's argument asserting Respondent should have designated other positions as managerial exempt concerns the propriety and legality of Respondent's designation, which are not currently before us. The only issue before us is whether Respondent acted with impermissible political motive.

### III. <u>Conclusion</u>

The General Assembly vested Director van der Vaart with statutory authority to designate five employees at OAH as exempt. The Record does not establish a *prima facie* case that Director van der Vaart did so with political motivations in Petitioner's position. Therefore, we conclude ALJ Gray did not err in granting summary judgment in Respondent's favor on Petitioner's political affiliation discrimination claim. The judgment appealed from is affirmed.

AFFIRMED.

Judges TYSON and COLLINS concur.